UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
MAJAI GOODINE,

                        Plaintiff,

        -against-                                    MEMORANDUM & ORDER
                                                     14-CV-4514 (JS)(ARL)
SUFFOLK COUNTY WATER AUTHORITY;
BOARD OF TRUSTEES, SUFFOLK COUNTY
WATER AUTHORITY; JEFF SZABO,
Chairman of the Board, Suffolk
County Water Authority and
Individually; FRED BERG,
Supervisor, Suffolk County Water
Authority and Individually; OSCAR
MONTAVO, Sr. General Utility Person,
Suffolk County Water Authority and
Individually; DONNA MARCUSSO,
Administrator, Suffolk County Water
Authority and Individually; JANE
MARESSI, Human Resources, Suffolk
County Water Authority and
Individually; UTILITY WORKER'S UNION
OF AMERICA, AFL-CIO, LOCAL 393; and
NICK CARRACAPPA, Union Representative,
Utility Worker's Union of America,
AFL-CIO, Local 393 and Individually,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:                  Harriet A. Gilliam, Esq.
                                Law Office of Harriet A. Gilliam
                                P.O. Box 1485
                                711 Union Ave.
                                Riverhead, NY 11901

For Defendants
Suffolk County Water
Authority, Board of
Trustees, Suffolk
County Water Authority,
Jeff Szabo, Fred Berg,
Oscar Montavo, Donna
Marcusso, Jane Maressi:  Mark A. Hernandez, Esq.

Melissa Miriam Stannard, Esq.
Putney, Twombly, Hall & Hirson LLP
521 Fifth Ave.
New York, NY 10175

Utility Worker's Union
of America, AFL-CIO,
Local 393; Nick
Carracappa:        Paula A. Clarity, Esq.
Robert T. McGovern, Esq.
Archer, Byington, Glennon & Levine LLP
One Huntingon Quadrangle, Suite 4C10
Melville, NY 11747

SEYBERT, District Judge:

This action arises out of Plaintiff Majai Goodine's employment with the Suffolk County Water Authority ("SCWA").[1] Two motions are pending before the Court. First, defendants SCWA and the Board of Trustees of the SCWA along with Jeff Szabo ("Szabo"), Fred Berg ("Berg"), Oscar Montalvo ("Montalvo"), Donna Mancuso ("Mancuso"), and Jane Morrisroe ("Morrisroe")[2], in their official and individual capacities, (collectively, the

---

[1] As an initial matter, the Court notes that the SCWA is an administrative arm of the municipal entity, Suffolk County, and thus lacks capacity to be sued as a separate entity. See, e.g., Caidor v. M & T Bank, No. 05-CV-0297, 2006 WL 839547, at *2 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" (quoting Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002))). As a result, the Court construes the Complaint to be lodged against Suffolk County.

[2] The SCWA Defendants assert that Plaintiff incorrectly named Oscar Montalvo as "Oscar Montavo," Donna Mancuso as "Donna Marcusso," and Jane Morrisroe as "Jane Maressi" in the Complaint. (SCWA's Br., Docket Entry 10, at 1.) The Clerk of the Court is directed to amend the caption accordingly.

"SCWA Defendants") move to dismiss the Complaint for failure to state a claim. (Docket Entry 8.) The Individual Defendants have also challenged the Court's jurisdiction based on improper service of process. Second, defendants Utility Worker's Union of America, AFL-CIO, Local 393 (the "Union") and Nick Carracappa, in his official and individual capacity, (collectively, the "Union Defendants") also move to dismiss the Complaint for failure to state a claim. (Docket Entry 12.) For the following reasons, the SCWA Defendants' motion is GRANTED, and the Union Defendants' motion is GRANTED.

BACKGROUND[3]

I.  Factual Background[4]

---

[3] The facts alleged in the Complaint are presumed to be true for the purposes of this Memorandum and Order. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)).

[4] Before providing a factual background, the Court must address Plaintiff's failure to comply with the Local Civil Rules and this Court's Individual Motion Practices. The SCWA Defendants note that Plaintiff submitted his opposition papers one day past the filing deadline. (See SCWA's Reply Br., Docket Entry 19, at 1 n.2.) The Court, however, will not reject Plaintiff's papers for non-compliance. As the Second Circuit made clear, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Although Plaintiff submitted his opposition papers one day late, the parties were "fairly and adequately apprised of the nature and basis of the application." See Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc., No. 10-CV-0347, 2013 WL 5725987, at *2

A. <u>Plaintiff's Employment with the SCWA</u>

Plaintiff, an African-American male, worked as a utility person[5] for the SCWA from September 11, 2012 until his termination on February 22, 2013. (Compl., Docket Entry 1, ¶¶ 7, 18.) The Court notes that five SCWA employees played an important role in the circumstances that led to this lawsuit: (1) Szabo, the Chief Executive Officer of the SCWA (Compl. ¶ 11); (2) Berg, a supervisor (Compl. ¶ 12); (3) Montalvo, another supervisor (Compl. ¶ 13); (4) Morrisroe, an administrator who, among other things, signed off on employee evaluations (Compl. ¶ 14); and (5) Mancuso, another administrator who signed off on employee evaluations (Compl. ¶ 15).

During his brief employment at the SCWA, Plaintiff was a member of the Union. (Compl. ¶ 16.) The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement between the Union and the SCWA (the "Collective Bargaining Agreement" or "CBA"). (<u>See</u> CBA, SCWA's Decl. Ex. B, Docket Entry 9-2.) Article III, Section 3, of the

---

(E.D.N.Y. Oct. 21, 2013). Thus, the Court will consider Plaintiff's opposition papers.

[5] The Complaint does not elaborate on Plaintiff's job description, but the SCWA Defendants allege that Plaintiff was a member of SCWA's Construction Maintenance Department and made various water pipe repairs and installations. (SCWA's Br. at 2.)

Collective Bargaining Agreement states that "[t]he first one hundred twenty (120) working days of employment shall be a probationary period for new employees. Absence from work shall not be considered as a working day with reference to the computation of the above one hundred twenty (120) working days." (CBA at 6.)[6] Section 3 further states that the SCWA has "the right to discharge any employee during the employee's probationary period, and such discharge shall not be subjected to arbitration." (CBA at 6.) Plaintiff alleges that he was the "only African American probationary employee in his position title." (Compl. ¶ 22.)[7]

B.  Plaintiff's Performance Evaluations

Throughout the probationary period, Plaintiff received three performance evaluations, which were all conducted by Berg. (Compl. ¶¶ 25-26, 31-32, 35-36.) His evaluations consisted of

_____

[6] For the purposes of this Memorandum and Order, the Court will use the page numbers generated by the Electronic Case Filing System when referring to the parties' exhibits.

[7] The parties dispute whether Plaintiff was a probationary employee at the time of his termination. (See, e.g., Pl.'s Opp. Br., Docket Entry 15, at 1; SCWA's Br. at 3-4; Union's Br., Docket Entry 13, at 2). Plaintiff contends that the SCWA and the Union "[a]cted in concert . . . [to] arriv[e] at the conclusion that plaintiff had not completed the 120 day probation, thereby denying plaintiff permanent status." (Compl. ¶ 24(c).)

fifteen categories[8] focusing on personal qualities (e.g., motivation and attitude) and work habits (e.g., independence and initiative). (See, e.g., First P.E., SCWA's Decl. Ex. C, Docket Entry 9-3, at 2.) For each category, an employee could receive four different ratings: (1) Unsatisfactory, (2) Needs Improvement, (3) Satisfactory, and (4) Exceeds Standards. (See, e.g., First P.E. at 2.)

In his first performance evaluation dated October 11, 2012, Plaintiff received six ratings of "Needs Improvement." (See First P.E. at 2.) For example, Berg noted that Plaintiff "requires consistent attention & follow up" and should "avoid being idle," as "there is always something to do (even in preparation for upcoming job tasks)." (First P.E. at 2-3.)

Plaintiff's performance did not improve in his second evaluation dated December 11, 2012. (See Second P.E. at 2.) In conducting the review, Berg consulted with Plaintiff's supervisors, shop steward, and crew leaders. (Second P.E. at 3.) Based on his investigation, Berg determined that Plaintiff needed improvement in eleven categories. (Second P.E. at 2.) Berg noted that Plaintiff was "not motivated," "[e]asily

---

[8] Although sixteen categories are listed on the performance evaluation sheet, Berg evaluated Plaintiff in fifteen categories because the category of "Leadership" was inapplicable. (See Second Performance Evaluation ("P.E."), SCWA's Decl. Ex. D, Docket Entry 9-4, at 2; Third P.E., SCWA's Decl. Ex. E, Docket Entry 9-5, at 2).

distracted," and "[s]low paced."   (Second P.E. at 2.)  Berg warned Plaintiff that if he wished to continue working with the SCWA, he needed to "quickly and comprehensively institute genuine improvements to prove to his Supervisors and peers that he can perform the work."  (Second P.E. at 3.)

Despite Berg's warning, Plaintiff received another lackluster review on his third and final performance evaluation dated February 13, 2013.  (Compl. ¶ 35; see Third P.E. at 2.) He received five ratings of "Needs Improvement" and seven ratings of "Unsatisfactory."  (Third P.E. at 2.)  Like his prior performance reviews, Plaintiff had "not been able to match his agreeable attitude with the requisite mechanical competence necessary in the construction field."  (Third P.E. at 3.)

Plaintiff was terminated on February 22, 2013.  (See Compl. ¶ 18.)  Plaintiff disputes the reviews and alleges that "he was constantly being reassigned without training and supervision and constantly being verbally harassed."  (Compl. ¶ 34.)

C.   The Alleged Discrimination

The Complaint alleges that the SCWA had a "pattern and practice of discriminat[ing] against African Americans." (Compl. ¶ 54.)  To bolster this assertion, Plaintiff alleges that he was "subjected to differential treatment and different terms and conditions of employment than similarly situated white

employees." (Compl. ¶ 23.) Plaintiff believed that a fellow employee named Chris Miller was "treated better than him." (N.Y. State Div. of Human Rights' ("NYSDHR") Order, SCWA's Decl. Ex. I, Docket Entry 9-9, at 4.) Plaintiff claims that at various points, he lodged complaints to management to protest this alleged discriminatory conduct. (See, e.g., Compl. ¶¶ 23(g), 48-49.)

D.     The Alleged Conspiracy and Retaliation

Plaintiff insists that the SCWA and the Union "conspired . . . to violate [his] equal protection rights." (See, e.g., Compl. ¶ 59.) Plaintiff alleges that he "was retaliated against for complaining about the discriminatory treatment in that he was subjected to further harsher and unwarranted false evaluations which were not even reviewed and signed off on by defendants Mancuso and Morrisroe, as required." (Compl. ¶ 23(g).) Plaintiff further alleges that following his first performance evaluation, he complained to an SCWA Trustee and Szabo about the alleged discriminatory treatment and faced "progressively worse, false evaluations which ultimately led to his discriminatory termination." (Compl. ¶ 48.) Plaintiff contends that the SCWA and the Union "[a]cted in concert . . . to utilize the evaluation process to deny plaintiff continuation of employment." (Compl. ¶ 24(b).)

II.  Procedural History

    A.  Plaintiff's Arbitration of his Termination

        Plaintiff, through the Union, contested his
termination by filing a grievance under the terms of the
Collective Bargaining Agreement.  (Grievance, SCWA Decl. Ex. F,
Docket Entry 9-6; SCWA Decl., Docket Entry 9, ¶ 10; see also CBA
at 13-14.)  Although he received notice of the time and date of
the hearing, Plaintiff failed to attend, and the Arbitrator
dismissed the matter with prejudice.  (See Arbitrator's Order,
SCWA's Decl. Ex. G, Docket Entry 9-7.)

    B.  Plaintiff's Administrative Complaints

        On December 9, 2013, Plaintiff filed a complaint with
the NYSDHR.  (See NYSDHR Charge, SCWA's Decl. Ex. H, Docket
Entry 9-8.)  In it, Plaintiff essentially makes two arguments:
(1) the SCWA Defendants engaged in racial discrimination and
retaliatory conduct; and (2) the Union Defendants aided and
abetted that misconduct.  (NYSDHR Charge at 7-8.)  Ultimately,
the NYSDHR dismissed Plaintiff's complaint for lack of probable
cause.  (See NYSDHR's Order at 2.)  The NYSDHR found that "there
is no information to corroborate that Mr. Miller received better
treatment and/or work assignments than [Plaintiff]."  (NYSDHR's
Order at 7.)

        Plaintiff appealed the decision to the Equal
Employment Opportunity Commission ("EEOC"), which later adopted

the NYSDHR's findings.  (EEOC Dismissal, Compl. at 15.)[9]  The

EEOC issued a Dismissal and Notice of Rights on April 28, 2014,

giving Plaintiff ninety (90) days to file this Complaint.  (See

EEOC Dismissal.)

C.    Pending Motions to Dismiss

On July 28, 2014, this lawsuit was filed.  (See

Compl.)  Plaintiff asserts claims under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

("Title VII"); 42 U.S.C. §§ 1981, 1983, and 1985 (respectively,

"Section 1981," "Section 1983," and "Section 1985"); and the

Equal Protection Clause of the Fourteenth Amendment.  (Compl.

¶ 1.)

On January 30, 2015, the SCWA Defendants moved to

dismiss the Complaint.  (Docket Entry 8.)  Plaintiff alleges

that the SCWA: (1) engaged in racial discrimination in violation

of Title VII (Compl. ¶¶ 43-46); (2) engaged in retaliatory

conduct in violation of Title VII (Compl. ¶¶ 47-50);

(3) violated Plaintiff's constitutional rights by discriminating

against him in violation of Section 1983 (Compl. ¶¶ 51-54); and

(4) conspired with the Union to deny Plaintiff his

constitutional rights under Section 1985 (Compl. ¶¶ 58-60).

Plaintiff also alleges that Szabo, Berg, Montalvo, Morrisroe,

_____

[9] The EEOC Dismissal is annexed to the Complaint at page 15 of
the document.

and Mancuso, in their individual capacities, (collectively, the "Individual Defendants") discriminated against Plaintiff based on his race in violation of Section 1983. (Compl. ¶¶ 51-54.) In response, the SCWA Defendants argue that Plaintiff has failed to plausibly allege his respective claims against them. (SCWA's Br. at 6-17, 19-22.) Separately, the Individual Defendants contend that the Court lacks in personam jurisdiction because Plaintiff failed to properly effectuate service. (SCWA's Br. at 17-18.)

The Union Defendants have also moved to dismiss the Complaint. (Docket Entry 12.) Plaintiff alleges that the Union Defendants: (1) discriminated against him in violation of Section 1981 (Compl. ¶¶ 55-57); and (2) conspired with the SCWA to deny Plaintiff his constitutional rights under Section 1985 (Compl. ¶¶ 58-60). In response, the Union Defendants argue that Plaintiff has failed to plausibly allege his claims. (Union's Br. at 3-8.)

DISCUSSION

I.  <u>Legal Standard</u>

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at 1974. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted).

II. SCWA Defendant's Motion to Dismiss

The Court will address Plaintiff's claims against the SCWA and then turn to his claims against the Individual Defendants.

12

A.  Claims Against the SCWA

1.  Discrimination under Title VII

As an initial matter, the Court is mindful of two important considerations when evaluating a motion to dismiss for an employment discrimination claim.  First, an "EEOC charge and the [state] agency's determination are both public records, of which this Court may take judicial notice."  Muhammad v. N.Y. City Trans. Auth., 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) (citing Moll v. Telesector Resources Grp., Inc., No. 04-CV-0805, 2005 WL 2405999, at *4 (W.D.N.Y. Sept. 29, 2005)); see also Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (noting that the EEOC complaints are an "integral part of [the] pleadings").  Thus, the Court will consider the NYSDHR and EEOC's determinations "without converting this argument into a motion for summary judgment."  See Muhammad, 450 F. Supp. 2d at 205.

Second, discrimination claims under Title VII, Section 1981, and Section 1983 are generally analyzed under the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  See Littlejohn v. City of N.Y., 795 F.3d 297, 312 (2d Cir. 2015) (citing Ruiz v. Cty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010)).  Under this framework, the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at

13

802, 93 S. Ct. at 1824. The defendant then bears the burden of establishing a "legitimate, non-discriminatory reason" for its actions. Id. If the defendant makes such a showing, the burden shifts back to the plaintiff to establish that the defendant's explanation is merely pretextual. Id.

At the pleadings stage, however, a plaintiff need not plead a prima facie case of discrimination. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) (finding that the McDonnell Douglas framework only applied at the summary judgment phase because it is "an evidentiary standard, not a pleading requirement"); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015). Rather, a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998 (quoting FED R. CIV. P. 8(a)(2)); accord Rodriguez v. Verizon Telecom, No. 13-CV-6969, 2014 WL 6807834, at *3 (S.D.N.Y. Dec. 3, 2014) (noting that courts still consider the prima facie elements of a discrimination claim to determine whether the complaint sufficiently provides the defendant with fair notice) (citation omitted).

Here, Plaintiff has not adequately plead his discrimination claim under Title VII. For a discrimination claim to survive a motion to dismiss, a plaintiff must plausibly

allege that: "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 86.

Plaintiff contends that he was "subjected to differential treatment and different terms and conditions of employment than similarly situated white employees." (Compl. ¶ 23.) As noted by the NYSDHR, Plaintiff believed that a fellow employee named Chris Miller was "treated better than him." (NYSDHR's Order at 4.) Yet the NYSDHR found that "there is no information to corroborate that Mr. Miller received better treatment and/or work assignments than [Plaintiff]." (NYSDHR's Order at 7.) Instead, it appears that Plaintiff was terminated because of his lackluster performance reviews. (See generally Compl.)

After reviewing the Complaint, the Court finds that Plaintiff has failed to identify another similarly situated employee who received better treatment. Although Plaintiff's burden is minimal at the pleadings stage, he must still provide "'a short and plain statement of the claim showing that [he] is entitled to relief.'" See Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998 (quoting FED R. CIV. P. 8(a)(2)). He has not done so. Thus, since Plaintiff's Section 1983 discrimination claim

against the SCWA fails as a matter of law, it is DISMISSED
WITHOUT PREJUDICE.[10]

### 2. Retaliation under Title VII

Plaintiff has also failed to plausibly allege that
SCWA engaged in retaliatory conduct in violation of the Title
VII. (See SCWA's Br. at 12-14.) For a retaliation claim to
survive a motion to dismiss, a plaintiff must allege facts
showing that: "(1) defendants discriminated--or took an adverse
employment action--against him, (2) because he has opposed any
unlawful employment practice." Vega, 801 F.3d at 90 (internal
quotation marks and citation omitted). Moreover, a plaintiff's
"complaints must be sufficiently specific to make it clear that
the employee is complaining about conduct prohibited by Title
VII. Generalized complaints about a supervisor's treatment are
insufficient." Risco v. McHugh, 868 F. Supp. 2d 75, 110

---

[10] Plaintiff attempts to assert an Equal Protection claim under
the Fourteenth Amendment. (See Compl. ¶¶ 1, 59.) Even if that
claim was formally plead, it would fail. "To state a claim for
an equal protection violation, [Plaintiff] must allege that a
government actor intentionally discriminated against [him] on
the basis of race, national origin or gender." Hayden v. Cty.
of Nassau, 180 F.3d 42, 48 (2d Cir. 1999); see also United
States v. City of Yonkers, 96 F.3d 600, 611 (2d Cir. 1996) ("A
plaintiff is required to show not only that the state action
complained of had a disproportionate or discriminatory impact
but also that the action was taken with intent to
discriminate.") (citations omitted). As noted above, Plaintiff
has failed to identify how Mr. Miller, or any co-worker for that
matter, received differential treatment. Thus, to the extent
the Complaint asserts an Equal Protection claim, that claim is
DISMISSED.

(S.D.N.Y. 2012) (citing Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011)).

Here, Plaintiff alleges that he "was retaliated against for complaining about the discriminatory treatment in that he was subjected to further harsher and unwarranted false evaluations." (Compl. ¶ 23(g).) Plaintiff further alleges that he complained to an SCWA Trustee and Szabo about the alleged discriminatory treatment and faced "progressively worse, false evaluations which ultimately led to his discriminatory termination." (Compl. ¶ 48.) But as more than one court has expressed, the Complaint needed to make it clear that SCWA's conduct violated Title VII. Risco, 868 F. Supp. 2d at 110 (citing Rojas, 660 F.3d at 108). Plaintiff has failed to do so. (See generally Compl.) With that, Plaintiff has not met the minimal burden required under Swierkiewicz. 534 U.S. at 512, 122 S. Ct. at 998 (citing FED. R. CIV. P. 8(a)(2)). Thus, since Plaintiff's retaliation claim against SCWA fails as a matter of law, it is also DISMISSED WITHOUT PREJUDICE.

### 3. Municipal Liability Under Section 1983

Next, SCWA Defendants move to dismiss Plaintiff's additional Section 1983 claim against SCWA for municipal liability under Monell. (SCWA's Br. at 11.) Plaintiff alleges that SCWA had a "pattern and practice of discriminat[ing]

against African Americans." (Compl. ¶ 54.) The Court disagrees.

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "an injury to a constitutionally protected right . . . that . . . 'was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy.'" Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 108-09 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008)); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978).

Although a policy or custom need not be explicitly stated, Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) (citing Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992)), isolated incidents will not suffice. See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985). Rather, a plaintiff may provide circumstantial evidence that "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" Kern, 93 F.3d at 44 (quoting Ricciuti v. N.Y. City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Put another way, the

"discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco, 971 F.2d at 871 (citations omitted).

Here, Plaintiff has not provided any evidence that SCWA had a policy or custom of discriminating against African Americans. See, e.g., Green v. City of N.Y., No. 06-CV-1836, 2009 WL 3319356, at *7 (E.D.N.Y. Oct. 14, 2009) (granting summary judgment where plaintiff's "conclusory allegations" did not support the existence of a policy or practice adopted by the defendant); Torino v. Rieppel, No. 07-CV-1929, 2009 WL 3259429, at *9 (E.D.N.Y. Oct. 8, 2009) (granting summary judgment because the plaintiffs "provided no evidence whatsoever that the [defendant] had a policy, custom, or practice of allowing the alleged constitutional violations") (citations omitted). Instead, Plaintiff alleges, in a conclusory fashion, that SCWA had a "pattern . . . to exclude African Americans from permanent positions." (Compl. ¶ 37.) The record does not support that finding. Thus, Plaintiff's Section 1983 Monell claim against SCWA is DISMISSED WITHOUT PREJUDICE.

4. Conspiracy Under Section 1985

To support a Section 1985 claim, a plaintiff must show: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; (3) an act in furtherance

19

of the conspiracy; and (4) whereby a person is . . . deprived of any right of a citizen of the United States.'" <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 341 (2d Cir. 2000) (quoting <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993)) (ellipses in original). A plaintiff must show some "class-based, invidious discriminatory animus behind the conspirators' action." <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks and citation omitted). The plaintiff must also show "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." <u>Id.</u> at 147 (citation omitted). "[V]ague and conclusionary allegations," without more, are not enough to sustain a Section 1985 action. <u>See Powell v. Workmen's Comp. Bd. of State of N.Y.</u>, 327 F.2d 131, 137 (2d Cir. 1964).

Both the evidence and Plaintiff's allegations fail to establish a Section 1985 claim. In this case, Plaintiff insists that the SCWA and the Union "conspired . . . to violate [his] equal protection rights." (Compl. ¶ 59.) But the Complaint is bereft of any evidence to support that allegation. Thus, the claim must be DISMISSED WITHOUT PREJUDICE.

B.  Claims Against the Individual Defendants

1.  Sufficiency of Service of Process

The Individual Defendants have moved to dismiss the Complaint, in part, based on improper service of process.  (SCWA Br. at 17-18.)  "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant."  The Am. Inst. of Certified Pub. Acct. v. Affinity Card, Inc., 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998) (citing Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987)).  In deciding a motion to dismiss on this ground, the plaintiff bears the burden of proving that service was valid.  Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010) (citing Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)).  "'If service is invalid, the Court may dismiss the case or may, in its discretion, retain the case, quash service, and direct that service be effectuated properly.'"  Anselm v. Diamond Packaging, No. 14-CV-6388, 2015 WL 2095774, at *4 (W.D.N.Y. May 4, 2015) (quoting M'Baye v. World Boxing Ass'n, 429 F. Supp. 2d 652, 657 (S.D.N.Y. 2006)); accord 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1354 (3d ed. 2015).

Under the Federal Rules of Civil Procedure, a plaintiff may serve an individual defendant by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). Through its Civil Practice Laws and Rules, New York law allows an individual defendant to be served by one of four methods: (1) personal service, (2) delivery and mail, (3) service to an agent, or (4) "nail and mail." N.Y. C.P.L.R. § 308(1)-(4). For the second option, a plaintiff must complete a two-step process within 20 days of each other. First, the plaintiff must deliver the summons and complaint "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served." N.Y. C.P.L.R. § 308(2). Second, the plaintiff must mail a copy of the summons and complaint either to the defendant's "last known address" or his "actual place of business." N.Y. C.P.L.R. § 308(2).

Here, the Individual Defendants note that Plaintiff "attempted to effectuate service of process . . . by leaving copies of the Summons and Complaint" with an SCWA receptionist. (SCWA Decl. ¶ 15.) They further note that Plaintiff never mailed them copies of the Summons and Complaint nor did he

submit an affidavit of service demonstrating proper service. (SCWA Decl. ¶¶ 16-17.) Plaintiff "submits that service was made upon the General Counsel for SCWA, who represented that he was authorized to accept service." (Pl.'s Opp. Br. at 15.) But the Individual Defendants assert that SCWA's General Counsel denies this allegation, (SCWA's Reply Br. at 8), and based on the Court's review of the docket, Plaintiff has not filed an affidavit of service demonstrating proper service of process. Thus, the Court determines that service was improper in this case and the claim is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction. FED. R. CIV. P. 4(m). The Court concludes that Plaintiff must properly serve the Individual Defendants within twenty (20) days of this Memorandum and Order.

### 2. Qualified Immunity

The Court finds that the consideration of the Individual Defendant's qualified immunity defense is premature at this stage. (See SCWA's Br. at 22.) Qualified immunity shields government officials from civil liability when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). In that regard, qualified immunity is "an

immunity from suit rather than a mere deference to liability [that] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985) (alteration added; emphasis omitted).

When analyzing a qualified immunity defense, the Court focuses on two questions: whether the facts "make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232, 129 S. Ct. at 816 (internal quotation marks and citation omitted). The Court may answer these questions in any order. Id. at 236, 129 S. Ct. at 818.

Although the issue of qualified immunity should be decided "at the earliest possible stage in litigation," Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994) (internal quotation marks and citation omitted), "'[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss . . . .'" Maloney v. Cty. of Nassau, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) (quoting Bernstein v. City of N.Y., No. 06-CV-0895, 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007)) (alteration and ellipsis in original). Thus, the Court

declines to rule on this defense until additional fact discovery has been completed.[11]

## III. Union Defendant's Motion to Dismiss

### A. Discrimination Under Section 1981

First, the Union Defendants move to dismiss Plaintiff's discrimination claim under Section 1981. (Union's Br. at 3-6.) The goal of Section 1981 is to protect the individual's right to be free from discrimination in making and enforcing contracts. See Gibbs-Alfano v. Burton, 281 F.3d 12, 16 (2d Cir. 2002); see also Smith v. Sav. Bank of Rockland Cty., No. 91-CV-3088, 1992 WL 350743, at *7 (S.D.N.Y. Nov. 16, 1992) ("To violate Section 1981, a defendant must have prevented a plaintiff from making or enforcing contracts") (citation omitted). Specifically, Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . .

42 U.S.C. § 1981(a). Thus, courts in this Circuit require plaintiffs to demonstrate that (1) "there has been a substantive violation of plaintiff's right to make contracts based on his race" and (2) "the named defendants can be held liable for that violation." Philippeaux v. N. Cent. Bronx Hosp., 871 F. Supp. 640, 654 (S.D.N.Y. 1994), aff'd, 104 F.3d 353 (2d Cir. 1996).

---

[11] Since the Court has dismissed Plaintiff's claims, the Court need not address Plaintiff's alternative arguments.

Here, the Complaint contains no allegations indicating that Plaintiff entered into a contractual relationship with any of the Defendants. In fact, the only contract that is mentioned in the Complaint is the Collective Bargaining Agreement. (See generally Compl.) Thus, since Plaintiff's Section 1981 claim against the Union Defendants fails as a matter of law, it is DISMISSED WITHOUT PREJUDICE.

B. Conspiracy Under Section 1985

Second, the Union Defendants move to dismiss Plaintiff's conspiracy claim. (Union's Br. at 7-8.) As noted above, see supra 19-21, the Complaint fails to plausibly state a claim regarding a conspiracy between the SCWA and the Union. (See generally Compl.) Thus, this conspiracy claim is also DISMISSED WITHOUT PREJUDICE.

IV. Leave to Amend

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) (citing Ronzani v. Sanofi S.A., 889 F.2d 195, 198 (2d Cir. 1990)); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). For the reasons discussed above, Plaintiff is granted leave to replead his claims.

<u>CONCLUSION</u>

The SCWA Defendants' motion to dismiss the Complaint (Docket Entry 8) is GRANTED, and Plaintiff's claims against the SCWA Defendants are DISMISSED WITHOUT PREJUDICE and with leave to replead. The Union Defendants' motion to dismiss the Complaint (Docket Entry 12) is also GRANTED, and Plaintiff's claims against the Union Defendants are DISMISSED WITHOUT PREJUDICE and with leave to replead. If Plaintiff wishes to file an Amended Complaint, he must do so within thirty (30) days of the date of this Memorandum and Order. If he fails to do so, his claims will be dismissed with prejudice.

Plaintiff must properly serve the Individual Defendants within twenty (20) days from the date of this Memorandum and Order.

The Clerk of the Court is directed to amend the caption and replace Oscar Montavo with his correct name "Oscar Montalvo," Donna Marcusso with her correct name "Donna Mancuso," and Jane Maressi with her correct name "Jane Morrisroe.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     January __29__, 2016
           Central Islip, New York