```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MAJAI GOODINE,

                        Plaintiff,

        -against-                              MEMORANDUM & ORDER
                                               14-CV-4514 (JS)(ARL)
SUFFOLK COUNTY WATER AUTHORITY;
BOARD OF TRUSTEES, SUFFOLK COUNTY
WATER AUTHORITY; JEFF SZABO,
Chairman of the Board, Suffolk
County Water Authority and
Individually; FRED BERG,
Supervisor, Suffolk County Water
Authority and Individually; OSCAR
MONTALVO, SR. General Utility Person,
Suffolk County Water Authority and
Individually; DONNA MANCUSO,
Administrator, Suffolk County Water
Authority and Individually; JANE
MORRISROE, Human Resources, Suffolk
County Water Authority and
Individually; UTILITY WORKER'S UNION
OF AMERICA, AFL-CIO, LOCAL 393; and
NICK CARRACAPPA, Union Representative,
Utility Worker's Union of America,
AFL-CIO, Local 393 and Individually,

                        Defendants.
----------------------------------------X
```

APPEARANCES
For Plaintiff:         Harriet A. Gilliam, Esq.
                       Law Office of Harriet A. Gilliam
                       P.O. Box 1485
                       711 Union Avenue
                       Riverhead, New York 11901

For Defendants:
Suffolk County Water
Authority; Board of
Trustees, Suffolk
County Water Authority;
Jeff Szabo; Fred Berg;
Oscar Montalvo, Sr.;
Donna Mancuso;

```
Jane Morrisroe:              Mark A. Hernandez, Esq.
                             Putney, Twombly, Hall & Hirson LLP
                             521 Fifth Avenue
                             New York, New York 10175

Utility Worker's Union
of America, AFL-CIO,
Local 393; Nick
Carracappa:                  Paula A. Clarity, Esq.
                             Robert T. McGovern, Esq.
                             Archer, Byington, Glennon & Levine LLP
                             One Huntingon Quadrangle, Suite 4C10
                             Melville, New York 11747
```

SEYBERT, District Judge:

Majai Goodine ("Plaintiff") brought this employment discrimination suit against his former employer, Suffolk County Water Authority (the "County"),[1] as well as his union, the Utility Worker's Union of America, AFL-CIO, Local 393, and union representative Nick Carracappa (collectively, the "Union"). After the Court dismissed this case for failure to state a claim, Plaintiff filed an Amended Complaint, and now the Union and the County have moved to dismiss.[2] (Docket Entries 28, 30.)

---

[1] The Court previously stated that the Suffolk County Water Authority is not a suable entity. (Jan. 2016 M&O, Docket Entry 24, at 2 n.2.) But based on the New York Public Authorities Law, the Authority has the power to sue and be sued. N.Y. PUB. AUTH. L. § 1078.

[2] Claims against individual County employees were dismissed without prejudice for lack of personal jurisdiction. (Jan. 2016 M&O at 23.) The Court instructed Plaintiff to complete service of process within twenty days of the January 29, 2016 M&O, but he failed to do so. In any event, Plaintiff appears to have dropped his claims against these individual Defendants. (Compare Compl., Docket Entry 1, at 12 with Am. Compl., Docket Entry 25, at 15.) Accordingly, the Clerk of the Court is

For the reasons that follow, the Union's motion is GRANTED, and the County's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

The Court assumes familiarity with the facts and procedural history, which are detailed in the Court's prior opinion. (See Jan. 2016 M&O at 3-8.) The Court accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

I.  The Facts

As alleged in his pleadings, first filed in 2014 and then amended in 2016, Plaintiff--an African-American "utility person"--entered into a collective bargaining agreement ("CBA")[3] with the Union. (Am. Compl. ¶¶ 14, 16, 18, 22.) The CBA provided for a 120-day probationary period before a new hire becomes a permanent employee. (Am. Compl. ¶ 19; see also CBA

---

directed to terminate (1) Jeff Szabo, (2) Fred Berg, (3) Oscar Montalvo, Sr., (4) Donna Mancuso, and (5) Jane Morrisroe as co-defendants.

[3] When citing to any exhibits, the Court will use the page numbers assigned by the Case Management/Electronic Case Files (CM/ECF) system. References are as follows: the collective bargaining agreement "CBA" (Cty.'s Decl. Ex. B, Docket Entry 9-2); Plaintiff's grievance form dated March 4, 2013 "Grievance Form" (Cty.'s Decl. Ex. F, Docket Entry 9-6); the arbitrator's October 1, 2013 order "Oct. 2013 Arb. Order" (Cty.'s Decl. Ex. G, Docket Entry 9-7); the administrative complaint "NYSDHR Compl." (Cty.'s Decl. Ex. H, Docket Entry 9-8); and the April 2014 Determination and Order "Apr. 2014 D&O" (Cty.'s Decl. Ex. I, Docket Entry 9-9).

Art. III § 3.) Plaintiff received three increasingly negative performance reviews and thus did not pass the probationary period. (Am. Compl. ¶¶ 25, 31, 35.) This outcome, Plaintiff argues, is because he was the only African-American probationary employee in his position. (Id. ¶ 22.)

II. The Procedural History

Plaintiff, through the Union, contested his termination by filing a grievance under the CBA. (Grievance Form at 2-3.) Although he received notice of the hearing's date and time, Plaintiff failed to attend, and the arbitrator dismissed the matter with prejudice. (Oct. 2013 Arb. Order at 2-3.)

Plaintiff then filed an administrative complaint with the New York State Division of Human Rights ("NYSDHR") against the County alleging, among other things, that a white probationary employee named Chris Miller received better treatment. (NYSDHR Compl. at 7 ¶ 2.) The NYSDHR's investigation, however, did not reveal any discriminatory practices, and the complaint was therefore dismissed for lack of probable cause. (Apr. 2014 D&O at 8.) The Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights letter adopting the NYSDHR's findings. (Compl. at 15.)

This lawsuit followed on July 18, 2014. Plaintiff asserted claims for race-based discrimination, retaliation,

4

municipal liability, and conspiracy. (Compl. ¶¶ 43-60.) The Union and the County filed motions to dismiss, which the Court granted because Plaintiff failed to state any claims. (Jan. 2016 M&O at 27.) The following claims against the County were dismissed without prejudice:

- Race-Based Discrimination: "After reviewing the Complaint, the Court finds that Plaintiff has failed to identify another similarly situated employee who received better treatment." (Id. at 15.)

- Retaliation: "The Complaint needed to make it clear that [the County's] conduct violated Title VII. Plaintiff has failed to do so." (Id. at 17) (capitalization altered) (internal quotation marks and citation omitted).

- Municipal Liability: Plaintiff failed to plausibly allege specific facts showing that the Court "had a policy or custom of discriminating against African Americans." (Id. at 19.)

- Conspiracy: "In this case, Plaintiff insists that the [County] and the Union conspired [ ] to violate [his] equal protection rights. But the Complaint is bereft of any evidence to support that allegation." (Id. at 20) (third alteration in original) (internal quotation marks and citation omitted).

Likewise, for similar reasons, the claims against the Union were dismissed without prejudice. (Id. at 25-26.) To cure these deficiencies, Plaintiff filed an Amended Complaint on February 29, 2016.

III. The New Allegations in the Amended Complaint

Plaintiff renews his claims against the County: (1) discrimination under Title VII (Am. Compl. ¶¶ 43-48); (2) retaliation under Title VII (id. ¶¶ 49-53); (3) municipal

5

liability under Section 1983 (id. ¶¶ 54-58); and (4) conspiracy under Section 1985 (id. ¶¶ 64-66). Plaintiff also renews his claims against the Union: (1) discrimination under Section 1981 (id. ¶¶ 59-63) and (2) conspiracy under Section 1985 (id. ¶¶ 64-66).

The allegations in the Amended Complaint, drawn in Plaintiff's favor, are substantially similar to the ones made in his first pleading:

- Race-Based Discrimination: Under Title VII, Plaintiff alleges that the County favors white employees and grants them accommodations to complete their probationary period. (Id. ¶ 46.) Critically, however, Plaintiff does not identify any employee by name; rather, he refers to a generic class of "similarly situated white employees" that allegedly received better treatment. (Id. ¶ 23.) Under Section 1981, Plaintiff alleges that the Union failed to advocate on his behalf and failed to challenge the County's discriminatory practices. (Id. ¶¶ 60-62.)

- Retaliation: Plaintiff clarifies that between his first and second performance reviews, he complained about discriminatory treatment, not unfair treatment generally. (Id. ¶¶ 50-51.)[4] In fact, "within a short time of his complaints," the County subjected him to differential treatment, including "out of duty assignments without adequate tools, supervision and instruction." (Id.) Then, under a "false appearance that he was not qualified for his position," Plaintiff received his second and third performance reviews, which were increasingly negative. (Id. ¶¶ 23(g), 45.)

- Municipal Liability: Plaintiff asserts that the County endorses a "pattern and practice of discrimination against African American probationary employees such as Andre (last name unknown)." (Id. ¶ 58; see also id. ¶¶ 37, 56-57.)

---

[4] The Amended Complaint contains two paragraphs numbered fifty-one. In this M&O, the Court refers to the paragraph beginning on page eleven.

6

- <u>Conspiracy</u>: Plaintiff alleges that the Union and the County "entered into a tacit agreement . . . to discriminate against [him] on account on his race and to deny him the opportunity to complete his probationary period in good standing." (<u>Id.</u> ¶ 65(a).)

The Union and the County have moved to dismiss the Amended Complaint for failure to state a claim. (Docket Entries 28, 30.) Essentially, they argue that Plaintiff has failed to cure the deficiencies raised in the Court's prior opinion. (Union's Br., Docket Entry 29, at 5-13; Cty.'s Br., Docket Entry 32, at 8-23.)

## DISCUSSION

I. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007), and allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the plaintiff need not provide "detailed factual allegations" to support his claims, <u>Twombly</u>, 550 U.S. at 555-56, 127 S. Ct. at 1964, Rule 12(b)(6) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949.

7

Generally, the Court is "'required to look only to the allegations on the face of the complaint.'" Volpe v. Nassau Cty., 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013) (quoting Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)). But the Court may take judicial notice of an administrative complaint and the NYSDHR's Determination and Order "'to establish the fact of such litigation and related filings' . . . but 'not to support any factual determination in [this] subsequent litigation.'" Id. (quoting Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992)) (brackets in original).[5]

## II. The County's Motion to Dismiss

### A. Title VII Discrimination

At the pleadings stage, a Title VII plaintiff need not plead a prima facie case of discrimination; instead, he "'need only give plausible support to a minimal inference of discriminatory motivation.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015)). As relevant

---

[5] The parties have not addressed the availability of collateral estoppel based on the NYSDHR's Determination and Order, and the Court need not consider the issue on its own initiative. See Gomez v. Resurgent Cap. Servs., LP, 129 F. Supp. 3d 147, 156 n.6 (S.D.N.Y. 2015); In re: Fletcher Int'l, Ltd., No. 12-12796, 2016 WL 900385, at *3 (Bankr. S.D.N.Y. Feb. 26, 2016); see also Barnes v. N.Y. State Div. of Human Rights, No. 14-CV-2388, 2016 WL 5477737, at *3 (S.D.N.Y. Sept. 29, 2016) (applying collateral estoppel because the plaintiff "had a full and fair opportunity to present his complaint to the NYSDHR and . . . in state court.").

here, a plaintiff may allege disparate treatment of similarly situated employees not in the protected group. Pothen v. Stony Brook Univ., --- F. Supp. 3d ----, 2016 WL 5716842, at *6 (E.D.N.Y. 2016) ("At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination."); see also Trachtenberg v. Dep't of Educ. of City of N.Y., 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013). To be sure, whether an employee is similarly situated is normally a question of fact. Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014). After all, the names and records of any comparators "is information particularly within [the defendant's] knowledge and control." Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008). But a Title VII plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass. See Pothen, 2016 WL 5716842 at *6.

Plaintiff claims that he identified "another employee who is white and was hired at or about the same time as him and who was also on probation." (Pl.'s Br., Docket Entry 34,

9

at 10.)[6] But nothing in the Amended Complaint supports that proposition. Rather, Plaintiff refers to a generic class of white probationary employees, which is insufficient even at the pleadings stage. See Henry v. N.Y. City Health & Hosp. Corp., 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) ("Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian person is simply not sufficient . . . ."), cited in Boza-Meade v. Rochester Hous. Auth., 170 F. Supp. 3d 535, 554 (W.D.N.Y. 2016) (repeating the same idea following Vega and Littlejohn).

Trachtenberg, a case relied upon by Plaintiff, is a contrasting example. Trachtenberg, 937 F. Supp. 2d at 471. In that age discrimination case, a speech teacher "identified at least one speech teacher under 40 who was allegedly treated differently" and "five teachers over 40 who were allegedly subjected to the same or similar mistreatment." Id. (citations omitted). Although these allegations were "thin on specifics-- both as to how each comparator is similarly situated to [plaintiff] and what disparate treatment he or she was subjected to," the Southern District concluded that the "[plaintiff] ha[d], barely, pled sufficient facts to give rise to a plausible inference of discrimination based on disparate treatment." Id.;

---

[6] "Pl.'s Br." refers to Plaintiff's response to the County's motion to dismiss.

10

see also Pothen, 2016 WL 5716842 at *6 (denying a motion to dismiss because the plaintiff identified one comparator by name and claimed that other comparators were accountable to the same supervisors). In this case, however, Plaintiff did not identify any comparators by name. Although the NYSDHR Complaint refers to a white comparator (Chris Miller), the Court cannot use that information to establish a fact in a motion to dismiss. (See, NYSDHR Compl.) See Volpe, 915 F. Supp. 2d at 291. Elsewhere, the Amended Complaint states that Plaintiff is the only African-American probationary employee but also references another African-American probationary employee (Andre) who allegedly suffered mistreatment. But even if Andre was similarly situated, he is in the same protected group as Plaintiff and thus does not "'give plausible support to a minimal inference of discriminatory motivation.'" Vega, 801 F.3d at 84 (quoting Littlejohn, 795 F.3d at 311. Accordingly, his Title VII discrimination claim is DISMISSED WITH PREJUDICE.

   B.   Title VII Retaliation

Next, Plaintiff contends that he provided plausible allegations of retaliation. To prevail on such a claim, a plaintiff must allege facts showing that: "(1) defendants discriminated--or took an adverse employment action--against him, (2) because he has opposed any unlawful employment practice." Vega, 801 F.3d at 90 (internal quotation marks and

citation omitted). The threshold question is whether Plaintiff alleged unfair treatment generally, as with his original Complaint, or racial discrimination. Plaintiff has alleged the latter. The Amended Complaint adds new allegations that Plaintiff "engaged in protected activity--complaining about or otherwise opposing discrimination," Id. at 91, and his negative performance reviews "constitute an adverse action for purposes of a retaliation claim." Cerni v. J.P. Morgan Secs. LLC, --- F. Supp. 3d ----, 2016 WL 5805300, at *3 (S.D.N.Y. 2016).

Thus, the Court must determine whether Plaintiff plausibly alleged "a connection between the alleged retaliatory acts and his ethnicity." Vega, 801 F.3d at 91. In Vega, for example, a high school teacher "allege[d] that after he engaged in protected activity . . . he was assigned more students with excessive absenteeism records (jumping from 20% to 75%), his salary was temporarily reduced, he was not notified that the curriculum for one of his classes changed, and he received a negative performance evaluation." Id. The Second Circuit concluded that "[e]ach of these allegations plausibly state[d] a claim of retaliation." Id. Here, like the Vega teacher, Plaintiff received a negative performance review after he complained about discriminatory treatment. (Am. Compl. ¶ 23(g).) He likewise alleged that he received out-of-duty assignments without adequate training. (Id. ¶¶ 23(g), 45, 50–

12

51.) Based on these allegations, his retaliation claims survive a motion to dismiss.

In response, the County argues that Plaintiff failed to plausibly allege a causal relationship between the protected activity and the negative performance reviews because the temporal proximity is too attenuated. (Cty.'s Reply Br., Docket Entry 36, at 5.) Without a bright line from the Second Circuit, "district courts in this Circuit have held that a gap of <u>more than two months</u> between the protected activity and the alleged adverse employment action is too long to establish an inference of discrimination." Pothen, 2016 WL 5716842 at *7 (emphasis added) (citing Garrett v. Garden City Hotel, Inc., No. 05-CV-0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007)). Approximately two months elapsed between Plaintiff's complaints and his next performance review; thus, although Plaintiff teeters precariously close to the cut-off point, he has plausibly alleged a causal relationship based on temporal proximity.[7] In any event, Plaintiff independently alleges that

---

[7] The County cites a summary order and an unpublished district court decision that use a two-month gap, not two-months-and-change, as a dividing line. (Cty.'s Reply Br. at 5.) This intracircuit discrepancy offers no help to the County, however, because these cases were decided at the summary judgment stage with different sets of facts. Stoddard v. Eastman Kodak Co., 309 F. App'x 475, 480 (2d Cir. 2009) ("[W]here the protected activity took place two months prior to the alleged adverse action, <u>and where there is nothing other than that temporal proximity invoked to establish a retaliatory intent</u>, the causal

13

he received out-of-duty assignments "within a short time of his complaints." (Am. Compl. ¶ 51.)

Depending on the results of discovery, it is plausible that the County issued two increasingly negative performance reviews in response to Plaintiff's complaints. The Court acknowledges that there might be legitimate, non-discriminatory reasons for these evaluations, but that is a question for summary judgment. Accordingly, the County's motion to dismiss with respect to the retaliation claim is DENIED.

C.   Section 1983 Municipal Liability

Next, Plaintiff renews his municipal liability claim under Section 1983. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). For a Monell claim to survive a motion to dismiss, a plaintiff must plausibly allege an official policy or custom that caused an injury. Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008). For instance,

> a plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom

---

relationship is not established.") (emphasis added); Ruhling v. Tribune Co., No. 04-CV-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (rejecting an eighteen-year gap between the protected activity and the adverse action).

14

> of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp. 3d 303, 315-16 (E.D.N.Y. 2016).

As with his first pleading, Plaintiff has not made any plausible allegations that the County engaged in a systematic effort to discriminate against any African-Americans. The Amended Complaint offers only conclusory allegations. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, Plaintiff's municipal liability claim is DISMISSED WITH PREJUDICE.

D.  Section 1985 Conspiracy

Finally, Plaintiff argues that the Union and the County formed a conspiracy against him. To plead a Section 1985 claim, a plaintiff must plausibly allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . .; (3) an act in furtherance of the conspiracy; and (4) whereby a person is . . . deprived of any right or privilege of a citizen of the United States.'" Cine SK8 v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted).

15

As the Second Circuit has made clear, "claims of conspiracy 'containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (quoting Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993)).

Here, Plaintiff has failed to plausibly allege the existence of a conspiracy. He states, in conclusory fashion, that the Union and the County "entered into a tacit agreement . . . to discriminate against [him] on account on his race and to deny him the opportunity to complete his probationary period in good standing." (Am. Compl. ¶ 65(a).) But the plausibility standard does not hinge on whether a pleading invokes certain terms of art. Looking at the substance here, Plaintiff has not presented specific facts supporting the existence of a conspiracy or some meeting of the minds. See Greene v. City of N.Y., No. 08-CV-0243, 2017 WL 1030707, at *30 (E.D.N.Y. Mar. 15, 2017). Thus, Plaintiff's Section 1985 conspiracy claim against the County is DISMISSED WITH PREJUDICE.

III. The Union's Motion to Dismiss

   A.   Section 1981 Discrimination

Plaintiff also contends that the Union discriminated against him. Section 1981 "'outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions

16

of a contractual relationship, such as employment.'" Henry, 18 F. Supp. 3d at 410 (quoting Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004)). It bears emphasizing that "Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims." Id. (collecting cases). As with his Title VII discrimination claim, Plaintiff's Section 1981 claim relies on innuendo, not specific facts. The Union, moreover, participated in a grievance proceeding with Plaintiff and against the County. (Oct. 2013 Arb. Order at 2-3.) Therefore, his Section 1981 discrimination is DISMISSED WITH PREJUDICE.

    B.   Section 1985 Conspiracy

As already noted, the Amended Complaint fails to plausibly state a claim regarding a conspiracy between the Union and the County. Thus, Plaintiff's Section 1985 conspiracy claim against the Union is DISMISSED WITH PREJUDICE.

IV. Leave to Amend

The Court's usual practice is to allow a plaintiff leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). But the Second Circuit recently emphasized that if a plaintiff is "on notice" of his pleading's deficiencies and fails to cure, the district court may deny leave to file a second amended complaint. McCabe v. ConAgra Foods, Inc., --- F. App'x ----, 2017 WL 889516, at *3 (2d Cir. 2017) (citing cases).

17

Here, in the January 2016 M&O, the Court identified the Complaint's flaws--for example, Plaintiff did not identify any similarly situated employees for his discrimination claims. (Jan. 2016 M&O at 15.)  Despite this notice, the Amended Complaint offers conclusory allegations for all claims with the exception of his retaliation claim.  Therefore, the Court finds that any further amendments would be futile.

<u>CONCLUSION</u>

The Union's motion (Docket Entry 28) is GRANTED, and the County's motion (Docket Entry 30) is GRANTED IN PART and DENIED IN PART.  The case will proceed with Plaintiff's retaliation claim against the County.

The Clerk of the Court is directed to terminate (1) Jeff Szabo, (2) Fred Berg, (3) Oscar Montalvo, Sr., (4) Donna Mancuso, and (5) Jane Morrisroe as co-defendants.  The Clerk of the Court is also directed to dismiss the Utility Worker's Union of America, AFL-CIO, Local 393, and its representative Nick Carracappa.

SO ORDERED.

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated:    March   31  , 2017  
          Central Islip, New York

18